# 2000 DTA 88

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE BAYAMON
PANEL I**

MUNICIPIO DE GUAYNABO
Demandante-Apelado

v.

ANGEL UBARRI APONTE
H/N/C HEAVY EQUIPMENT PARTS
Demandado-Apelante

Núm. KLAN-99-00566

San Juan, Puerto Rico, a 8 de febrero de 2000

Panel integrado por su Presidente, Juez Sánchez Martínez,
la Jueza Cotto Vives y la Jueza Ramos Buonomo

Sánchez Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La controversia que en esencia plantea este caso es si se le puede imponer responsabilidad civil a un oficial de una corporación que participó personalmente en la preparación de facturas falsas que dicha corporación sometió a un municipio para cobrar por servicios que no fueron prestados por dicha corporación para las fechas que indican tales facturas.

El Tribunal de Primera Instancia resolvió que el municipio perjudicado con esa práctica podía demandar y recobrar directamente de dicho oficial corporativo lo indebidamente pagado sin que fuese indispensable demandar también a la corporación.

Este Tribunal confirma la sentencia apelada, aunque modificada para reducir la cuantía de honorarios de

abogado por temeridad.

I

El 17 de junio de 1996, el Municipio de Guaynabo presentó una demanda en cobro de dinero contra Angel Ubarri Aponte, quien hace negocios como Heavy Equipment Parts. La demanda fue presentada a raíz de una intervención realizada por la Oficina del Contralor de Puerto Rico en el Municipio de Guaynabo. El Informe de Auditoría número M-93-1 del 30 de septiembre de 1992, en el Hallazgo 4(C), páginas 32-34, señala que la compañía Heavy Equipment Parts recibió pagos indebidos por la suma de $23,581 de parte del Municipio de Guaynabo, ya que unas reparaciones alegadamente realizadas en el equipo de dicho municipio no fueron efectuadas en el período facturado. Por esta razón, el Municipio de Guaynabo solicitó que el demandado Ubarri Aponte devolviera la suma en cuestión. Oportunamente, el demandado contestó la demanda y negó ser el contratista que efectuó las reparaciones en controversia.

El 20 de octubre de 1998 se celebró el juicio en su fondo. El Municipio de Guaynabo presentó prueba documental y testifical. La prueba documental consistió en el Informe de Auditoría número M-93-1 del 30 de septiembre de 1992 preparado por la Oficina del Contralor. La prueba testifical consistió en el testimonio del señor Ernesto Ortega, auditor de la Oficina del Contralor de Puerto Rico. Este último declaró que durante la investigación de la Oficina del Contralor, el demandando Ubarri Aponte fue entrevistado y explicó que las reparaciones reclamadas se efectuaron en una fecha anterior, pero que el municipio extravió las facturas y documentos relacionados con dichas reparaciones y que nunca pudo reproducir las facturas. El señor Ortega también declaró que durante la entrevista el demandado Ubarri Aponte admitió que a solicitud del Municipio de Guaynabo preparó las cotizaciones y rehizo las facturas sobre las reparaciones en cuestión, pero con otras fechas posteriores, permitiendo así que el municipio pudiera emitir el pago por los servicios prestados anteriormente que no le habían pagado. Durante el juicio, el demandado Ubarri Aponte no presentó prueba alguna para controvertir las declaraciones del señor Ortega ni los hallazgos en su contra que surgían del Informe M-93-1.

A la luz de la prueba presentada, el 21 de octubre de 1998, el Tribunal de Primera Instancia emitió una sentencia declarando con lugar la demanda y ordenó al demandado Ubarri Aponte pagar al Municipio de Guaynabo la suma de $23,581.00, más las costas y $2,000 de honorarios de abogado. Dado que dicha sentencia carecía de las correspondientes determinaciones de hecho y conclusiones de derecho, el demandado Ubarri Aponte apeló ante nos. Este Tribunal dejó sin efecto la sentencia y devolvió el caso al tribunal apelado para que prepara una sentencia con sus determinaciones de hecho y de derecho conforme a la Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2.

Cumpliendo con lo ordenado por este Tribunal, el 30 de abril de 1999, el Tribunal de Primera Instancia procedió a dictar una nueva sentencia en la cual concluyó que el demandado Ubarri Aponte fabricó, con la anuencia de los funcionarios municipales, cotizaciones y facturas para cobrar por conducto de Heavy Equipment Parts la suma total de $23,581 por reparaciones alegadamente realizadas. También determinó que la participación directa del demandado Ubarri Aponte en los actos dirigidos a que Heavy Equipment Parts obtuviera el pago indebido de $23,581 le impone responsabilidad solidaria a éste y a su compañía ante el Municipio de Guaynabo. Finalmente, el Tribunal de Primera Instancia declaró con lugar la demanda y condenó al demandado Ubarri Aponte a pagar al Municipio de Guaynabo la cantidad de $23,581, más las costas y $5,000 de honorarios de abogado.

Inconforme con dicha sentencia, comparece ante nos el señor Ubarri Aponte mediante el presente recurso de apelación y solicita que se revoque la sentencia apelada. El señor Ubarri Aponte aduce que incidió el foro apelado al: condenarlo a pagar al Municipio de Guaynabo cuando este último contrató con Heavy Equipment Parts; ordenar el pago y devolución de $23,581 habiéndose efectuado las reparaciones correspondientes al equipo del municipio; determinar la responsabilidad solidaria del demandado Ubarri Aponte por éste haber representado a Heavy Equipment Parts ante el municipio y los investigadores de la Oficina del Contralor; y condenar al demandado a pagar $5,000 por concepto de honorarios de abogado.

14

## II

Discutiremos conjuntamente los primeros tres errores relativos a la responsabilidad civil del apelante Ubarri Aponte ante la reclamación del Municipio. Los preceptos legales que rigen las relaciones económicas entre entidades privadas y los municipios están revestidos de un gran interés público y aspiran a promover una sana y recta administración pública. *Hatton v. Mun. de Ponce,* 134 D.P.R. ___ (1994), **94 J.T.S. 2.** La buena administración de un gobierno es una virtud de democracia y parte de una buena administración implica llevar a cabo sus funciones de comprador con eficacia, honestidad y corrección para proteger los intereses y dinero del pueblo al cual dicho gobierno representa. *Id.*

Al tratarse de fondos públicos, existe un interés en evitar pagos y reclamaciones fraudulentas o ilegales. Indudablemente, no importa la cuantía envuelta, el manejo prudente de fondos públicos está saturado de intereses de orden público. *Id.* Cualquier suma es importante, por pequeña que fuera, cuando se trata de los bienes del dinero de una comunidad municipal. *Id.* Los intereses de esas comunidades son del pueblo, los de los contribuyentes y su empleo o inversión requieren un gran cuidado que se traduce en las exigencias legales. *Id.*

En el caso de Hatton, la prueba demostró que el demandante, en conjunto con empleados del municipio, participó por años en un esquema diseñado para burlar la ley y no tener que efectuar subasta pública, lo cual es un requisito de ley. Bajo esos hechos, el Tribunal Supremo, de manera muy enérgica, se negó a elevar a rango de precedente judicial actos efectuados contra las leyes que encarnan principios fundamentales de política pública y sana administración de fondos públicos. *Id.*

En su escrito de apelación, el demandado Ubarri Aponte alega que la prueba documental sometida por estipulación de las partes y admitida por el tribunal *a quo* confirma que en todo momento el Municipio de Guaynabo contrató y pago a Heavy Equipment Parts y que ninguna transacción y documentación se efectuó con el demandado Ubarri Aponte. También alega que incidió el Tribinial de Primera Instancia al imputarle responsabilidad solidaria al demandado por éste haber representado a Heavy Equipment Parts ante el Municipio de Guaynabo y ante los investigadores de la Oficina del Contralor.

El demandado Ubarri Aponte aduce que las facturas aquí en cuestión fueron pagadas con cheques del Municipio de Guaynabo y los mismos se emitieron a la orden de Heavy Equipment Parts. De igual forma, los comprobantes de desembolso, las órdenes de compra o servicio y las requisiciones de compra o servicio preparadas por dicho municipio identifican a Heavy Equipment Parts como reclamante, acreedor o suplidor. Por otro lado, el demandado Ubarri Aponte también señala que las facturas y cotizaciones cursadas al Municipio de Guaynabo para cobrar las reparaciones aquí en controversia estaban en papel comercial timbrado con el membrete de Heavy Equipment Parts.

No cabe duda de que todos los documentos en el récord identifican a Heavy Equipment Parts como acreedor o suplidor. No obstante, de la prueba en los autos también surge que en cada una de las facturas en cuestión, las cuales suman un total de $23,581, contiene una nota que lee así: *"CERTIFICO QUE ESTA FACTURA ES CORRECTA Y SU IMPORTE NO HA SIDO COBRADA AUN."* Dicha nota está inmediatamente seguida por la firma del demandado Angel Ubarri Aponte.

En materia de responsabilidad civil extracontractual, en *Sánchez Rodríguez v. López Jiménez,* 118 D.P.R. 701 (1987), se establece la existencia de la solidaridad cuando varias personas intervienen o cooperan en la realización de un daño. En tales circunstancias, cada uno queda obligado personalmente por razón de su propia culpa. *Id.* Los que han concurrido en un delito civil están todos obligados solidariamente a la reparación. *Id.* Ante la imposibilidad de atribuir, a priori, la parte que cada uno de los partícipes ha tenido en la producción del daño, cada uno responde al perjudicado en su totalidad por el daño, sin distinción de la intensidad o gravedad de sus respectivas culpas. *Id.*

En el caso de autos, el Tribunal de Primera Instancia correctamente concluyó que el demandado Ubarri Aponte participó directamente en los actos dirigidos a que Heavy Equipment Parts obtuviera el pago de $23,581,

por lo que ambos están sujetos a responder solidariamente al Municipio de Guaynabo. Es importante mencionar que el tribunal apelado no le atribuyó responsabilidad al demandado Ubarri Aponte por éste haber representado a Heavy Equipment Parts ante el municipio y ante los investigadores de la Oficina del Contralor, sino por los propios actos del demandado al preparar documentos falsos para que dicha compañía cobrara al municipio. Estamos ante un demandado que cooperó consciente y voluntariamente en la preparación de cotizaciones y facturas falsas con la intención de que Heavy Equipment Parts obtuviera el pago del municipio por trabajos que no fueron realizados en el período facturado. El demandado tenía pleno conocimiento de la falsedad de la transacción llevada a cabo y, aún así, consintió y participó activamente de ella. De la prueba presentada ante el Tribunal de Primera Instancia, surge que el demandado le expresó al auditor de la Oficina del Contralor que en el año 1990, Heavy Equipment Parts realizó ciertas reparaciones en un equipo del Municipio de Guaynabo, que el municipio extravió las facturas y los documentos relacionados con dichas reparaciones y que el municipio le solicitó al demandado que rehiciera los mismos. El demandado le admitió que, ante tal solicitud, preparó unas cotizaciones y facturas con fechas posteriores para que le pagaran con el presupuesto vigente a ese momento.

Cabe señalar que el demandando Ubarri Aponte no testificó, ni presentó en el juicio prueba alguna que controvirtiera el testimonio del investigador de la Oficina del Contralor o el Informe de Auditoría M-93-1. La Regla 10(A) y (B) de Evidencia, 31 L.P.R.A. Ap. IV, R.10(A) y (B)p, establece que el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por ninguna de las partes. La obligación de presentar evidencia, primeramente recae sobre la parte que sostiene la afirmativa en la cuestión en controversia. *Id.*

En su escrito de apelación, el demandado Ubarri Aponte alega que las reparaciones correspondientes a las facturas en controversia efectivamente fueron realizadas, aunque en una fecha anterior. No obstante, el demandado tampoco presentó prueba a tales efectos. De la evidencia en los autos, no surge que tales reparaciones realmente se hicieron. Pero aun suponiendo que las mismas se hubiesen efectuado, éstas se facturaron con documentos falsos y, por lo tanto, no se justifica su pago.

El último señalamiento de error se refiere a la imposición de $5,000 de honorarios de abogado por temeridad. La Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1(d), establece que en caso de que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En *Blás v. Hosp. Guadalupe,* 146 D.P.R. ___ (1998), **98 J.T.S. 101,** el Tribunal Supremo señala que la imposición de honorarios de abogado es discrecional, pero la Regla 44.1(d) de Procedimiento Civil, *supra,* es clara en el sentido de que cuando una parte ha procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado. Por lo tanto, una vez determinada la existencia de temeridad, la condena de honorarios es imperativa. *Blás v. Hosp. Guadalupe, supra.*

El concepto *"temeridad"* no está expresamente definido por la Regla 44.1(d) de Procedimiento Civil, *supra.* Nuestro más Alto Foro, citando a un comentarista, señala que la temeridad es una actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. *Blás v. Hosp. Guadalupe, supra.* También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exhorbitante para su peculio. *Id.* En términos generales, se considera temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. *Id.*

El propósito de la imposición de honorarios de abogado en casos de temeridad es establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *Id.* Además, la imposición de honorarios de abogado tiene como propósito disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte. *Id.* De esta forma se viabiliza y garantiza la justa, rápida y económica solución del asunto ante la consideración del Tribunal. *Id.*

En *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713 (1987), el Tribunal Supremo resume las instancias bajo las cuales existe temeridad, a saber: (1) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (2) defenderse injustificadamente de la acción; (3) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (4) arriesgarse a litigar un caso del que se desprendía *prima facie* su responsabilidad; y (5) negar un hecho que le conste es cierto a quien hace la alegación.

En cuanto a la cuantificación de los honorarios de abogado, los tribunales de primera instancia pueden tomar en consideración factores tales como la naturaleza del litigio, las cuestiones de derecho envueltas en el mismo, la cuantía en controversia, el tiempo invertido, los esfuerzos y actividad profesional que hayan tenido que desplegarse, y la habilidad y reputación de los abogados envueltos. *Blás v. Hosp. Guadalupe, supra.* Deberá mantenerse presente que el grado o intensidad de la conducta temeraria o frívola es el criterio o factor determinante y crítico que tienen que tomar en consideración dichos tribunales al determinar la cuantía de los honorarios de abogado a imponerse a la parte perdidosa que ha actuado con temeridad o frivolidad. *Id.*

En vista de la doctrina antes expuesta es preciso concluir que el demandado Ubarri Aponte actuó con temeridad. Según la prueba presentada ante el tribunal apelado, el demandado admitió haber fabricado cotizaciones y facturas con fechas posteriores, a sabiendas de que los servicios facturados no se habían realizado en tales fechas. Consideramos que la conducta del demandado Ubarri Aponte constituyó temeridad, ya que éste litigó un caso conociendo su responsabilidad.

No obstante lo anterior, debemos mencionar que en la sentencia originalmente dictada el 21 de octubre de 1998 por el tribunal apelado, éste condenó al demandado Ubarri Aponte a pagar $2,000 por concepto de honorarios de abogado. Posteriormente, en la sentencia que dictó el 30 de abril de 1999 para incluir las determinaciones de hechos y conclusiones de derecho que ordenamos, el tribunal *a quo* condenó al demandado a pagar la suma de $5,000 de honorarios de abogado. Es norma reiterada que en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no intervendrán con las determinaciones de hechos, ni con la adjudicación de credibilidad que hizo el tribunal de primera instancia. *Colón v. Charlie Car Rental, Inc.*, 148 D. P.R. ___ (1999), **99 J.T.S. 89**. No existe fundamento en derecho para que un tribunal apelativo deje sin efecto aquellas conclusiones que encuentren apoyo en la prueba desfilada. Sin embargo, resolvemos que en el caso de autos, el tribunal *a quo* incurrió en error manifiesto al variar la partida de honorarios de abogado que debe pagar el demandado Ubarri Aponte. No habiendo ocurrido entre las dos sentencias algún factor o hecho esencial que justifique un aumento por concepto de honorarios de abogado, modificamos dicha partida para reducirla a la cantidad impuesta originalmente de $2,000.

## III

Con estos antecedentes, se modifica la sentencia apelada a los fines de reducir la partida de honorarios de abogado de $5,000 a $2,000 y, así modificada, se confirma.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General